# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ADAM ORDUNA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No: 2:23-cv-02420 |
| GRAY MEDIA GROUP, INC., | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) ) |

## COMPLAINT

Plaintiff Adam Orduna ("Plaintiff") states the following as his Complaint against Defendant Gray Media Group, Inc. ("Gray" or "Defendant"):

## INTRODUCTION

1. Plaintiff was discriminated against based on his race. When he complained about the discrimination, he was fired.

## PARTIES, VENUE, AND JURISDICTION

2. Plaintiff is a resident of Overland Park, Kansas.

3. Defendant is a Delaware corporation licensed to do business in Kansas and may be served via private process to its registered agent, C T Corporation System at 113 S.W.7th Street, Suite 3C, in Topeka, Kansas 66603.

4. This Court has original jurisdiction over this Complaint under 28 U.S.C. § 1331, in that this action is being brought under Title VII.

5. Venue is proper in the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1391(e)(1) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND FACTS

6. Meredith Corporation hired Plaintiff, an African American, on June 21, 2021, to serve as a Multi-Media Journalist ("MMJ") in the Sports Department at KCTV5, located in Fairway, Kansas.

7. Defendant Gray purchased Meredith Corporation as of January 1, 2022, and continued to employ Plaintiff.

8. Throughout his employment, Plaintiff was treated differently than his white colleagues. For example, Jared Koller, a white MMJ and Plaintiff's alleged equal, was given apparent authority over creating Plaintiff's schedule, monitoring his hours worked, and assigning projects.

9. This was the case even though Plaintiff had more experience than Mr. Koller.

10. Mr. Koller repeatedly undermined Plaintiff in the workplace by misleadingly "documenting" Plaintiff's alleged performance issues in order to set Plaintiff up for failure.

11. For example, Mr. Koller repeatedly instructed Plaintiff to go home before Plaintiff boothed the Saturday night show. Mr. Koller told Plaintiff to leave because, if Plaintiff boothed the show, Plaintiff would go over 40 hours in a week, something strictly forbidden by Defendant. Plaintiff's potential overtime was the result of Mr. Koller's scheduling. Then, Mr. Koller complained repeatedly to management that Plaintiff was not present on Saturday nights to booth the show.

12. Another example, Mr. Koller told Plaintiff he was scheduled to be off on Saturday, September 24, 2022. On September 26, 2022, Plaintiff received a call from his new supervisor, Sports Director, Scott Reiss, asking Plaintiff where he was over the weekend because Mr. Koller complained to Mr. Reiss that Plaintiff did not show up for work. Mr. Koller manipulated the

schedule without telling Plaintiff that it was being changed to require Plaintiff to be at work on September 24, and then reported this issue to their supervisor.

13. Another example, Mr. Koller told Plaintiff's colleague, Neal Jones, that Plaintiff did not like working with him. This statement was not only untrue, but the opposite of how Plaintiff feels; Plaintiff greatly respects and likes Mr. Jones.

14. Mr. Koller repeatedly created situations in which Plaintiff could not win and reported those situations to management in order to damage Plaintiff's reputation.

15. In approximately March 2022, Plaintiff met with Kate Glover because Mr. Koller told Plaintiff he was not supposed to be anchoring. Ms. Glover stated she had no issues with Plaintiff anchoring.

16. In approximately April 2022, Mr. Koller again told Plaintiff he was not allowed to anchor. Plaintiff went back to Ms. Glover, who once again told Plaintiff, "You're fine. Keep doing what you've been doing."

17. Plaintiff repeatedly heard his co-workers talking to and about him and stating that he was not allowed to anchor.

18. On approximately July 1, 2022, Andrew Stewart, General Manager, saw Plaintiff anchoring on air and asked Kate Glover why Plaintiff was anchoring.

19. Mr. Stewart and Ms. Glover met with Plaintiff about this issue. Ms. Glover told Plaintiff that the new Sports Director would make decisions regarding whether Plaintiff was allowed to anchor. Ms. Glover told Plaintiff that he had the least experience and that he should learn from Neal Jones and Jared Koller. Plaintiff corrected Ms. Glover's misunderstanding of his experience. Mr. Stewart and Ms. Glover then complimented Plaintiff's work. Ms. Glover

eventually stated, "I don't think your anchoring is strong enough for this market." Ms. Glover explained her shifting attitude by stating, "I was just trying to be nice."

20. On approximately November 1, 2022, Plaintiff met with Ms. Glover and Mr. Reiss. During this meeting, Ms. Glover read a laundry list of Plaintiff's alleged performance issues, including not boothing, missing work on September 24, failure to properly archive, time management, and other issues.

21. During this meeting, Ms. Glover asked Plaintiff to consider a move from the sports department to news.

22. Plaintiff asked if he did not want to move over to news, what would happen. Ms. Glover told him they'd probably let him go. Ms. Glover never followed up on this issue with Plaintiff.

23. Further, during that meeting, Plaintiff explained that he was being treated unfairly and that his work product was being unjustly assessed. Plaintiff expressed that he felt that Mr. Koller's performance needed to be addressed as well. Plaintiff also expressed that Mr. Koller should not be allowed to act as a supervisor.

24. On November 5, 2022, Plaintiff sent an email complaint of race discrimination to Scott Reiss, his direct supervisor, and Kate Glover, News Director of the station, along with HR, and his union representative. In the email, Plaintiff outlined that Mr. Koller had been targeting him, creating a hostile work environment, and generally displaying a lack of respect based on Mr. Koller's prejudice toward Black people. Mr. Koller spread the racist trope that Plaintiff was not willing to work hard.

25. On November 16, 2022, Plaintiff sent an email complaint to Mr. Reiss and Laurel Berenguer, HR, regarding retaliation by Kate Glover related to his complaint against Mr. Koller.

Ms. Glover also displayed racial prejudice by refusing to allow Plaintiff to be on air. In the email, Plaintiff expressed his concerns about retaliation and racism at the station.

26. On November 21, 2022, Plaintiff met with human resources via Zoom. HR told Plaintiff it would investigate his complaints.

27. In January 2023, Plaintiff was not included in the new sports department promotion.

28. With no notice, on January 24, 2023, Plaintiff was called in to an "urgent meeting" with Larry Eighme, Ronnie Hawkins, and Kate Glover. Amy Rose, Plaintiff's union representative, was on the phone. The meeting did not go well. Plaintiff felt Mr. Eighme was aggressive. Later that day, Mr. Eighme sent Plaintiff an email informing him that he was suspended without pay indefinitely with no explanation as to why.

29. On January 26, 2023, Plaintiff received a Notice of Termination for "Suitability."

30. As of January 26, 2023, Plaintiff had heard nothing about HR's alleged investigation of his complaints. Not only did Gray terminate Plaintiff, but it relied on Jared Koller's statements about Plaintiff to justify his termination. This is *after* Plaintiff specifically complained that Mr. Koller was targeting him and *without any* investigation by HR into Plaintiff's complaints.

## ADMINISTRATIVE EXHAUSTION OF REMEDIES

31. On April 11, 2023, Plaintiff timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

32. On August 9, 2023, Plaintiff received his Dismissal and Notice of Right to Sue from the EEOC.

33. Plaintiff, therefore, exhausted his administrative remedies on behalf of himself and others similarly situated and has timely filed this Complaint within 90 days of receiving his Notice of Right to Sue.

## COUNT I
### Violation of Title VII – Race Discrimination

34. Plaintiff incorporates the foregoing as if fully set forth herein.

35. Plaintiff is a member of a protected class in that he is African American.

36. Plaintiff suffered adverse actions in that he (1) received a poor performance review that was unjustified, (2) was prevented from anchoring, (3) was asked to voluntarily transfer to another department or be fired, (4) was left out of the sports department promotion, (5) was suspended without pay, and (6) was terminated from his employment.

37. Defendant discriminated against Plaintiff based on his race in that Plaintiff suffered these adverse actions when similarly situated white employees did not.

38. Plaintiff has been damaged by Defendant's discrimination.

WHEREFORE, Plaintiff requests relief and prays for judgment against Defendant as follows:

A. Judgment against Defendant, finding that Defendant violated Title VII;

B. All damages to which Plaintiff is entitled under Title VII, including economic and non-economic damages, punitive damages, attorneys' fees, costs, prejudgment interest; and

C. All further relief the Court deems just and equitable.

## COUNT II
### Violation of Title VII – Retaliation

39. Plaintiff incorporates the foregoing as if fully set forth herein.

40. Plaintiff is a member of a protected class in that he is an African American.

41. Plaintiff engaged in protected activity by opposing Title VII discrimination by complaining on November 5 and November 16, 2022, and by speaking with human resources about his complaints on November 21, 2022.

42. Plaintiff also engaged in protected activity when he complained at the January 24, 2023, meeting about race discrimination and retaliation.

43. Plaintiff suffered adverse actions in that he (1) received a poor performance review that was unjustified, (2) was prevented from anchoring, (3) was asked to voluntarily transfer to another department or be fired, (4) was left out of the sports department advertisement, (5) was suspended without pay, and (6) was terminated from his employment.

44. Defendant's failure to respond to Plaintiff's complaints demonstrate a causal connection between Plaintiff's protected activity and the adverse actions to which he was subjected.

45. Plaintiff has been damaged by Defendant's retaliation.

WHEREFORE, Plaintiff requests relief and prays for judgment against Defendant as follows:

A. Judgment against Defendant, finding that Defendant violated Title VII;

B. All damages to which Plaintiff is entitled under Title VII, including economic and non-economic damages, punitive damages, attorneys' fees, costs, prejudgment interest; and

C. All further relief the Court deems just and equitable.

## COUNT III
**Violation of Title VII – Hostile Work Environment**

46. Plaintiff incorporates the foregoing as if fully set forth herein.

47. Plaintiff is a member of a protected class in that he is African American.

48. Plaintiff was subjected to unwelcome harassment by Mr. Koller because of Plaintiff's race.

49. The harassment was severe and pervasive enough to alter the terms, conditions, and privileges of Plaintiff's employment, including: that he (1) received a poor performance review that was unjustified, (2) was prevented from anchoring, (3) was asked to voluntarily transfer to another department or be fired, (4) was left out of the sports department promotion, (5) was suspended without pay, (6) was forced to be a subordinate to a white male who had less experience and who was treating him terribly because of his race, and (7) was, ultimately, terminated from his employment.

50. When Plaintiff complained about Mr. Koller's actions, Defendant did nothing to stop them. Instead, Defendant fired Plaintiff.

51. Plaintiff has been damaged by the hostile work environment created by Defendant.

WHEREFORE, Plaintiff requests relief and prays for judgment against Defendant as follows:

A. Judgment against Defendant, finding that Defendant violated Title VII;

B. All damages to which Plaintiff is entitled under Title VII, including economic and non-economic damages, punitive damages, attorneys' fees, costs, prejudgment interest; and

C. All further relief the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial of all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

9

Dated: September 18, 2023

Respectfully submitted,

BOULWARE LAW LLC

/s/ Erin D. Lawrence
Brandon J.B. Boulware    KS #25840
Erin D. Lawrence         KS #25153
1600 Genessee, Suite 416
Kansas City, MO 64102
Tele/Fax:    (816) 492-2826
brandon@boulware-law.com
erin@boulware-law.com

***Attorneys for Plaintiff***

9