IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ADAM ORDUNA,<br><br>    Plaintiff,<br><br>v.<br><br>GRAY MEDIA GROUP, INC.,<br><br>    Defendant. | Case No. 23-2420-DDC-ADM |

**MEMORANDUM AND ORDER**

Plaintiff Adam Orduna ("Orduna") brings this employment-discrimination action against his former employer, defendant Gray Media Group, Inc. ("Gray Media"). Orduna's complaint asserted a demand for a jury trial. (ECF 1, at 8.) The case is now before the court on Gray Media's Motion to Strike Jury Demand. (ECF 9.) Gray Media asks the court to strike Orduna's jury demand under Federal Rule of Civil Procedure 39(a)(2) because the parties' employment agreement included a waiver of the right to a jury trial. Orduna opposes the motion, arguing that the waiver (1) was not knowing and voluntary as required by Tenth Circuit law, and (2) in any event, does not apply to the statutory claims in this action. As explained below, the court grants Gray Media's motion and strikes the jury demand.

I.     **BACKGROUND**

Orduna is an African American male. In December 2015, he graduated from the University of Missouri, Kansas City, with a bachelor's degree in broadcast journalism. From September 2015 to December 2017, he was a sports intern and newsroom assistant for KMBC Channel 9 news in Kansas City, Missouri. In December 2017, Orduna began as a sports anchor and reporter for KQTV news in St. Joseph, Missouri. Orduna stayed in that position for three and a half years until

June 2021, when he accepted a job as a multi-media journalist in the sports department at Kansas City news station KCTV5.  At the time, KCTV5 was owned by Meredith Corporation.  Orduna was 31 years old.

In connection with his new job, Orduna entered an employment agreement with Meredith Corporation.  The employment agreement contained the following provision:

> **Bench Trial**
>
> The parties hereby voluntarily waive their right to a jury trial and agree to submit any claims to a court for a bench trial, to the full extent permissible under applicable law, Employee having been first advised to seek the advice of an attorney.

(ECF 10-1, at 9.)  In December 2021, Gray Media acquired Meredith Corporation and assumed Orduna's employment agreement.

In January 2023, Gray Media terminated Orduna's employment.  In September 2023, Orduna filed this lawsuit alleging racial discrimination, retaliation, and hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  Orduna's complaint alleged, among other things, that a co-worker harassed him because of his race and that Gray Media discriminated in its job assignments and performance assessments.  Orduna demanded a jury trial on "all issues so triable."  (ECF 1, at 8.)

Gray Media now moves to strike Orduna's jury demand because the employment agreement contained a jury-waiver provision.  Orduna opposes the motion, arguing the waiver was ineffective because he did not make it knowingly and voluntarily, and in any event, it does not apply to statutory claims, such as the ones he asserts herein.

II.    WAS THE WAIVER KNOWING AND VOLUNATARY?

The court first considers whether Orduna knowingly and voluntarily waived his right to a jury trial, such that the contractual-waiver provision is valid and enforceable.

2

### A. LEGAL STANDARDS

"The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment." *Jacob v. City of New York*, 315 U.S. 752, 752 (1942). However, like other constitutional rights, a party may waive its right to a jury trial. *Telum Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988). "[A]greements waiving the right to trial by jury are neither illegal nor contrary to public policy." *Id.* But the waiver of this fundamental right must be "knowing and voluntary." *Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992).

In determining whether a contractual waiver of the jury-trial right was knowing and voluntary, courts balance four considerations: "(1) whether the clause containing the waiver was conspicuous; (2) whether there was a gross disparity in bargaining power between the parties; (3) the business or professional experience of the party opposing the waiver; and (4) whether the party opposing the waiver had an opportunity to negotiate contract terms." *Bandokoudis v. Entercom Kansas City, LLC*, No. 2:20-cv-02155-EFM, 2021 WL 1575222, at *2 (D. Kan. Apr. 22, 2021) (citing *Webster Capital Fin., Inc. v. Newby*, No 12-2290-EFM, 2013 WL 589626, at *3 (D. Kan. Feb. 14, 2013)); *see also Walker v. SC Realty Servs., Inc.,* No. 15-9932-JAR, 2016 WL 4245487, at *2 (D. Kan. Aug. 11, 2016) (discussing these four considerations); *Boyd v. U.S. Bank Nat'l Ass'n,* No. 06-2115-KGS, 2007 WL 2822518, at *18 (D. Kan. Sept. 26, 2007) (same). "While the Tenth Circuit has not determined who carries the burden of demonstrating the knowing and voluntary nature of the waiver, the majority of courts have decided that the burden lies with the party seeking to enforce the contractual waiver." *Webster Capital,* 2013 WL 589626, at *3 (quoting *Boyd*, 2007 WL 2822518, at *18); *see also Fifth Third Bank v. KC II Insure Servs., LLC*, No. 11-CV-02101-CM, 2011 WL 13228763, at *2 (D. Kan. Apr. 29, 2011) ("The majority of

3

courts hold that the burden of establishing that the waiver was knowing and voluntary lies with the party seeking to enforce the contractual waiver."); *Hulsey v. West,* 966 F.2d 579, 581 (10th Cir. 1992) (noting that the court "need not resolve this issue" under the circumstances presented).  "In the employment agreement context, placing the burden on the party seeking to enforce the contractual jury waiver—typically the employer—is appropriate due to the inherent inequality of bargaining power and risk of coercion by the employer in negotiating the employment agreement." *Walker,* 2016 WL 4245487, at *2.  Here, the parties agree that Gray Media bears the burden of demonstrating that Orduna knowingly and voluntarily agreed to the waiver provision in his employment contract.  (ECF 10, at 4; ECF 17, at 6.)

### B. ANALYSIS

After balancing the four relevant considerations, the court determines that Orduna knowingly and voluntarily waived his right to a jury trial when he entered the employment agreement.

<u>First</u>, the waiver clause in the employment agreement was conspicuous.  It was clearly labeled, with the label bolded and underscored.  The provision was printed in the same font size as the rest of the agreement, not a smaller font.  And it was separately set-out in the same format as the rest of the agreement, not buried in another provision or attachment.  Although Orduna argues the waiver clause should have been set out in all capital letters because "other headings" are so capitalized (ECF 17, at 6), the only capitalized provision in the agreement is that in which the signatories attest that they have read and understood the agreement, and that Orduna was informed that he should have an attorney review the agreement before signing.  (ECF 10-1, at 1.)  As the court will discuss below, that capitalized provision weighs in favor of finding waiver.  Finally, the agreement itself was not excessively long—being nine pages—such that the waiver

provision could get lost in its bowels.  Given these facts, the court finds the jury-trial waiver was conspicuous.  *See, e.g., Assessment Techs. Inst., LLC v. Parkes*, No. 19-2514-JAR, 2022 WL 588889, at *4 (D. Kan. Feb. 25, 2022); *Bandokoudis,* 2021 WL 1575222, at *2; *MWK Recruiting, Inc. v. Jowers,* No. 1:18-CV-444-RP, 2020 WL 4370138, at *3 (W.D. Tex. July 20, 2020); *Walker,* 2016 WL 4245487, at *3; *Webster Capital*, 2013 WL 589626, at *3.

Second, the court finds no gross disparity of bargaining power between the parties. "Although there is inevitably disparity in bargaining power between an employer and an employee," such inherent disparity does not weigh against enforcing a waiver provision. *Bandokoudis,* 2021 WL 1575222, at *2; *see also MWK Recruiting*, 2020 WL 4370138, at *2 ("[T]he inherent disparity in bargaining relationships that is the consequence of normal employer-employee relations does not automatically render a waiver involuntary." (quotation omitted)). Rather, "the relevant inquiry is whether the disparity was 'gross' as suggested by the Tenth Circuit."  *Boyd,* 2007 WL 2822518, at *19 (quoting *Telum,* 859 F.2d at 837); *see also Bandokoudis,* 2021 WL 1575222, at *2 ("[T]he Court concludes that the facts here do not establish *gross* disparity" between radio-host employee and radio-station employer.); *Fifth Third Bank*, 2011 WL 13228763, at *4 ("[T]he Court finds that a gross disparity in bargaining power would be required to invalidate a jury waiver provision." (internal modification and citation omitted)).

The undisputed facts here do not indicate a gross disparity in bargaining power.  Orduna is not unsophisticated, and he does not suggest that he did not understand the waiver clause.  At the time he entered the employment agreement, he was 31 years old, had a college degree, and had been working in the television broadcast industry for more than five years.  He had previously entered an employment contract with another television station—the contract with KCTV5 was not the first.  Orduna was employed in the industry as a sports anchor and news reporter.  These

factors suggest Orduna could have maintained his position or sought employment from a different media outlet. There is nothing here to suggest this was a situation, for example, in which Orduna was under duress, in dire circumstances, or had no other option but to accept the KCTV5 job on the terms offered. *See Jones v. Tubal-Cain Hydraulic Sols., Inc.*, No. 4:16-cv-01282, 2017 WL 3887235, at *3 (S.D. Tex. Sept. 6, 2017) (finding no gross disparity in bargaining power where plaintiff did not "allege that his personal circumstances were dire, he was under duress, or had no other option than to accept the job on the terms . . . offered").

Although Orduna notes that he is only an individual while Meredith Corporation "was a large corporation in a large market" (ECF 17, at 7), such inherent differences are not unusual in the American employment arena and do not invalidate the waiver provision. *See Jones,* 2017 WL 3887235, at *3 (finding no gross disparity in bargaining power where employee had not finished high school and employers were "a sophisticated conglomeration of corporate and business entities"). Orduna also asserts that the position at KCTV5 was a career-advancing opportunity and a way for him to "move home to Kansas City," about 50 miles south of St. Joseph. (ECF 17, at 7.) While that may be true, it is again a rather typical experience for those accepting new employment, and Orduna cites no case suggesting that such opportunities indicate a gross disparity in bargaining power. In the end, nothing in the record suggests that the parties' differing bargaining power was gross or anything more than the inherent disparity that is a consequence of normal employer-employee relations. This factor weighs in favor of enforcing the contractual waiver.

Third, Orduna had experience in the broadcast industry at the time he signed the employment contract. As noted above, he had a bachelor's degree and had worked in the industry for five years. He previously had entered an employment agreement with another station. Orduna

6

argues that his background does not include legal training, such that it would qualify him to assess or negotiate contracts. But if the court were to analyze the third factor so narrowly, nearly all waiver agreements entered by non-lawyers would be struck as involuntary. The lack of legal training or experience are inapposite if the employee is sophisticated enough "to understand the import of a jury waiver provision." *See Jones,* 2017 WL 3887235, at *4 (quoting *Zavala v. Aaron's, Inc.*, No. 4:15-cv-123, 2015 WL 5604766, at *2 (E.D. Tex. Sept. 23, 2015)). Here, Orduna was educated and sophisticated enough to understand the provision. It is undisputed that he entered into at least one other employment contract with a broadcast media station and had previous employment experience in the industry. Additionally, the waiver provision at issue was "relatively straightforward and easily understood," such that any lack of business or legal experience on Orduna's part was immaterial. *Busch v. Broad Mgmt. Grp.*, No. 22-2746, 2023 WL 2894692, at *2 (E.D. La. April 11, 2023). These factors support a finding that Orduna's waiver was knowing. *See Bandokoudis,* 2021 WL 1575222, at *2 (holding that the "'[l]arge disparities in education and familiarity with the commercial processes [which] can permit an overreaching party to turn the other party's lack of knowledge into an unfair advantage'" did not exist where radio host was experienced in the industry and had entered other contracts (quoting *Boyd*, 2007 WL 2822518, at *19)).

Fourth, the record suggests that Orduna had the opportunity to negotiate the employment agreement, even if he did not take it. As noted above, the waiver provision itself explicitly suggested Orduna seek the advice of an attorney. Additionally, the signature page of the agreement included a paragraph, set out in all capitalization, attesting that "EMPLOYEE HAS BEEN INFORMED THAT, BEFORE SIGNING, HE/SHE SHOULD CONSULT AN ATTORNEY OF HIS/HER OWN CHOOSING AT HIS/HER OWN EXPENSE TO REVIEW THIS

7

AGREEMENT." (ECF 10-1, at 2.) Such encouragement to seek legal review suggests an openness to negotiate. Moreover, Orduna concedes that, in the broadcast industry, employees occasionally negotiate the salary provisions of their employment agreements. (ECF 17, at 3.)

Orduna notes that the start of the contract contained the heading "STANDARD TERMS AND CONDITIONS," and states that he believed that if he attempted to negotiate contractual terms, Meredith Corporation "would withdraw its offer of employment." (ECF 17, at 8.) But "[t]he mere fact that defendant may have rejected proposed changes to the waiver provision—if they had been proposed, which they were not—does not necessarily alter the knowing and voluntary nature of plaintiff's waiver." *Boyd,* 2007 WL 2822518, at *19 (internal quotations and citation omitted). That Meredith Corporation *may* have rejected a proposed change to the jury-waiver clause, had Orduna offered one, "is too speculative of a basis to find the jury waiver was not knowingly or voluntarily given." *Id.*; *see also Jones*, 2017 WL 3887235, at *2 (holding that even though "there was no discussion, explanation, or negotiation of the [employment] contract," the fact that both parties were mutually bound by the waiver provision (i.e., it was bilateral) weighed in favor of finding the contract negotiable); *MWK Recruiting*, 2020 WL 4370138, at *2 ("Even in the context of employment, a 'take it or leave it' situation alone does not make the waiver unenforceable or unconscionable." (internal quotation and citation omitted)). This factor also weighs in favor of finding waiver.

Orduna and Meredith Corporation entered a fairly standard employment agreement under fairly typical employer-employee conditions. After balancing the relevant factors, the court concludes that Orduna's waiver of his right to a jury trial in that agreement was knowing and voluntary. The court would reach this same conclusion even if one of the factors had weighed in Orduna's favor.

**III.     DOES THE WAIVER APPLY TO STATUTORY CLAIMS?**

Next, the court considers Orduna's argument that, even if the jury-waiver provision is valid, it does not apply to the Title VII claims he brings in this action but "only to claims arising out of the contract itself." (ECF 17, at 4.) The court finds the waiver is not so limiting.

Orduna's argument rests on the premise that the waiver provision is ambiguous, such that the court must construe it against the drafter (here, Meredith Corporation/Gray Media) and against waiver. (ECF 17, at 4 (citing *Liggatt v. Emps. Mut. Cas. Co.,* 46 P.3d 1120, 1126 (Kan. 2002)).) But the court finds no ambiguity in the provision. As noted above, the waiver provision reads: "The parties hereby voluntarily waive their right to a jury trial and agree to submit *any claims* to a court for a bench trial, to the full extent permissible under applicable law . . . ." (ECF 10-1, at 9 (emphasis added).) While broad, there is no ambiguity in this provision: the parties to the contract agreed to submit "any claim," without limitation, to a bench trial. "Terms that are intentionally very broad are not ambiguous for that reason, and requiring a party to list specific examples rather than rely on the word *any* would only add more confusing verbiage without any corresponding benefit to comprehension." *Perlman v. Wells Fargo Bank, N.A.*, No. 10-81612-CV, 2012 WL 12854876, at *2 (S.D. Fla. Apr. 3, 2012) (holding jury waiver of "any dispute or claim [that] results in a lawsuit" unambiguous). Thus, although courts generally indulge every reasonable presumption against waiver, "this is not a circumstance where such a presumption is reasonable, given the language of the contract." *Montalvo v. Aerotek, Inc.*, No. 5:13-cv-997-DAE, 2014 WL 6680421, at *14 (W.D. Tex. Nov. 25, 2014) (holding the terms "any dispute arising or in any way related to this agreement" unambiguous and applicable to statutory claims).

Orduna asserts that the waiver "applies only to claims arising out of the contract itself." (ECF 17, at 4.) But even if such limiting language is read into the waiver provision, courts have

9

held that statutory discrimination claims, by their nature, arise out of employment contracts.  In this regard, the court is persuaded by the following reasoning in *Montalvo*:

> The plain language of the jury waiver provision states that the signatory waives all rights to a trial by jury in any dispute arising out of the agreement.  Because the agreement is a general employment agreement, a dispute related to unlawful termination, by its nature, arises out of the agreement.  While the agreement does not specifically mention disputes involving discrimination, it does not need to: that particular dispute is encompassed in the broad category of disputes arising out of [plaintiff]'s employment with [defendant].

2014 WL 6680421, at *14.  *See also Brown v. Cushman & Wakefield, Inc.,* 235 F. Supp. 2d 291, 294 (S.D.N.Y. 2002) (holding waiver provision that included "any matters whatsoever arising out of this Agreement" applied to all of employee's claims, "including those arising under federal and state discrimination statutes").  Similarly here, the "any claim" language in the waiver provision clearly applies to Orduna's discrimination claims that arise out of his employment relationship with Gray Media.

## IV.     CONCLUSION

"Although the right to a jury trial is a vital and cherished right, the Court is loath to set aside lawful provisions of a valid contract entered into by two consenting parties." *Bandokoudis,* 2021 WL 1575222, at *3.  The parties mutually agreed to waive their rights to a jury trial.  This waiver applied to any claim arising from the employment relationship.  Thus, should this case reach the trial stage, the court will conduct a bench trial.

**IT IS THEREFORE ORDERED** that Gray Media's Motion to Strike Jury Demand (ECF 9) is granted.

Dated January 2, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell<br>
Angel D. Mitchell<br>
U.S. Magistrate Judge